**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ALNYLAM PHARMACEUTICALS, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 1:18-cv-10613-MLW |
| | : | |
| v. | : | |
| | : | |
| SILENCE THERAPEUTICS PLC, and | : | |
| SILENCE THERAPEUTICS GMBH, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Alnylam Pharmaceuticals, Inc. ("Alnylam" or "Plaintiff") brings this declaratory judgment action against Defendants Silence Therapeutics plc ("Silence plc") and Silence Therapeutics GmbH ("Silence GmbH") (collectively, "Defendants") and alleges as follows:

**NATURE OF ACTION**

1.     This is a civil action for declaratory judgment of non-infringement of U.S. Patent Nos. 7,893,245 ("the '245 patent"); 8,324,370 ("the '370 patent"); 8,933,215 ("the '215 patent"); 9,222,092 ("the '092 patent"); and 9,695,423 ("the '423 patent") (collectively, the "Silence Patents"). *See, e.g.*, Exh. 1, the '423 patent.

2.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## THE PARTIES

3.      Alnylam is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 300 Third Street, Cambridge, MA 02142.

4.      Upon information and belief, Silence GmbH is a company organized and existing under the laws of Germany with its principal place of business at Robert-Rössle-Str. 10, D-13125 Berlin, Germany.

5.      Upon information and belief, Silence GmbH is the assignee of record of the Silence Patents.

6.      Upon information and belief, Silence GmbH is a wholly owned subsidiary of Silence plc.

7.      Upon information and belief, Silence plc is a company organized and existing under the laws of the United Kingdom with its principal place of business at 72 Hammersmith Road, London, W14 8TH, United Kingdom.

8.      Upon information and belief, Silence plc is the exclusive licensee of the Silence Patents.

9.      Upon information and belief, Silence plc expanded its presence in the United States in 2010 with the acquisition of Intradigm Corporation ("Intradigm").

10.     Upon information and belief, Intradigm was a company that was organized and that existed under the laws of the State of Delaware with its principal place of business at 3350 W. Bayshore Road, Suite 100, Palo Alto, CA 94303.

11.     Upon information and belief, Intradigm maintained a registered agent at 1209 North Orange Street, Wilmington, DE 19801.

12.    Upon information and belief, Intradigm was a wholly owned subsidiary of Silence plc.

13.    Upon information and belief, Silence plc acquired Intradigm through an acquisition that was structured as a merger of Silence Acquisition Corp., a wholly owned U.S. subsidiary of Silence plc, with and into Intradigm, as a result of which Intradigm continued as the surviving corporation of the merger.

14.    Upon information and belief, Silence Acquisition Corp. was a company that was organized and that existed under the laws of the State of Delaware.

15.    Upon information and belief, Silence Acquisition Corp. maintained a registered agent at 1209 North Orange Street, Wilmington, DE 19801.

16.    Upon information and belief, Silence plc and/or Silence GmbH have collaborated and/or continue to collaborate with U.S. companies, such as Quark Pharmaceuticals, Inc. and AstraZeneca's U.S. operational unit, Medimmune.

17.    Upon information and belief, Silence plc formerly held licenses to patents owned by the University of Massachusetts Medical School.

18.    Upon information and belief, Silence plc seeks to broaden existing partnerships and further collaborate with pharmaceutical or biotechnological groups in the United States, including in Massachusetts.

19.    Upon information and belief, Silence plc and/or Silence GmbH have participated and continue to participate in conferences regarding RNA interference technology in Massachusetts, including Boston.

20.    For example, upon information and belief, Defendants gave a presentation titled "Silencing the gene, Curing the patient" at the 37th Annual Canaccord Genuity Growth

Conference on August 9 or 10, 2017 in Boston (the "August 2017 Presentation"). Exh. 7, August 2017 Silence Therapeutics Presentation.

21.     The August 2017 Presentation included statements that Defendants' modified siRNA technology is protected by six granted U.S. patents and four pending U.S. patent applications. *Id.* at 14. The August 2017 Presentation also included statements that at least four of Alnylam's late-stage siRNA products (including patisiran) need a license under Defendants' patent estate, and that granting licenses for these products would have a material financial impact on Defendants. *Id.* at 17.

22.     In addition, upon information and belief, Defendants' former Chief Executive Officer ("CEO") Ali Mortazavi gave a presentation at the Cowen 38th Annual Health Care Conference on March 13, 2018 in Boston (the "March 13, 2018 Presentation"). Exh. 8, March 13, 2018 Silence Therapeutics Presentation. The March 13, 2018 Presentation included statements that Defendants' patent portfolio protects Defendants' siRNA constructs and lead sequences. *Id.* at 6.

23.     In addition, upon information and belief, Marie Lindholm (Defendants' Head of Technology Innovation) and Torsten Hoffmann (Defendants' former Chief Operating Officer and former Chief Scientific Officer ("CSO")), presented at the Cambridge Healthtech Institute's Third Annual Oligonucleotide & Peptide Therapeutics Conference on March 27-28, 2018 in Cambridge. Exh. 9, Dr. Lindholm's March 27, 2018 Silence Therapeutics Presentation (the "March 27, 2018 Presentation"); Exh. 10, Dr. Hoffmann's March 28, 2018 Silence Therapeutics Presentation (the "March 28, 2018 Presentation").

24.     Dr. Lindholm's March 27, 2018 Presentation included statements that Defendants' siRNA molecules and sequences are protected by Defendants' intellectual property

granted in the U.S. and Europe, and by ten or more additional patent applications filed in 2017. Exh. 9 at 37.

25.     Dr. Hoffmann's March 28, 2018 Presentation included statements that Defendants' siRNA constructs and lead sequences are protected by patents. Exh. 10 at 12.

26.     Upon information and belief, Defendants' presentations in Massachusetts in August, 2017 and March, 2018 referenced the Silence Patents.

27.     Upon information and belief, Dmitry Samarsky, Defendants' former CSO, was also scheduled to speak at TIDES: Oligonucleotide and Peptide Therapeutics on May 10, 2018 in Boston and at RNA Therapeutics Conference 2018: From Base Pairs to Bedsides on June 28-29, 2018 in Worcester. Upon information and belief, Dr. Lindholm has replaced Dr. Samarsky on the schedule in Worcester.

28.     Upon information and belief, Dr. Samarsky was employed as Defendants' CSO through at least March 28, 2018. Exh. 10 at 6.

29.     Defendants have admitted that Dr. Samarsky "maintained a family home in Boston, Massachusetts" and occasionally "worked remotely from his family home in Boston" through March 2018. Declaration of Robert Quinn, Ph.D. (Dkt. No. 12-1) at ¶ 12.

30.     Upon information and belief, on June 4, 2018, Mr. Mortazavi stepped down as Defendants' CEO and was replaced by Annalise Jenkins, who is acting as interim Executive Chair of Defendants' Board of Directors.

31.     Upon information and belief, Dr. Jenkins was previously serving as Defendants' Non-Executive Chair starting around October 16, 2017.

32.     Upon information and belief, Dr. Jenkins is frequently present in Massachusetts, and is on the boards of three Massachusetts companies in addition to Defendants' Board.

33.     Upon information and belief, Dr. Jenkins, as interim Executive Chair, operates and oversees Defendants' activities from Massachusetts at least part of the time.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

35.     This Court has personal jurisdiction over Defendants at least under Federal Rule of Civil Procedure 4(k)(2).

36.     Venue is proper in this district under at least 28 U.S.C. § 1391(b) and (c).

## BACKGROUND ON ALNYLAM

37.     Alnylam, founded in 2002, is a pioneer in RNA interference ("RNAi"). RNAi technology has the potential to treat diseases in a fundamentally new way.

38.     Alnylam focuses on the development of small interfering RNA ("siRNA") molecules as therapeutics for use in patients.

39.     Alnylam's investigational RNAi products harness RNAi technology for the benefit of patients.

40.     Alnylam has made significant strides in the development and advancement of RNAi therapeutics with many investigational therapeutics in its pipeline proceeding through clinical trials or in the case of patisiran, now in regulatory review.

## ALNYLAM'S PATISIRAN PRODUCT

41.     Patisiran is an investigational intravenously-administered RNAi therapeutic targeting transthyretin ("TTR") in development for the treatment of hereditary transthyretin-mediated ATTR amyloidosis (known as "hATTR amyloidosis"), a genetic disease with limited treatment options.

42.     People with hATTR amyloidosis have misfolded TTR proteins which accumulate as amyloid deposits in the heart, nerves, GI tract, or other organs and cause debilitating symptoms, such as loss of sensation or pain in limbs, GI issues, heart-related issues, eye disease, kidney disease, or thyroid disease, among others.

43.     Patisiran comprises an siRNA molecule that is designed to suppress the production of TTR protein, thereby reducing the formation of TTR amyloid deposits in tissues and potentially restoring function to these tissues.

44.     The first Phase III clinical study of patisiran was initiated around November 2013.

45.     Also around November 2013, the Food and Drug Administration ("FDA") granted fast track designation to patisiran, recognizing the unmet need of hATTR amyloidosis patients with polyneuropathy.

46.     Alnylam's patisiran product demonstrated excellent Phase III clinical results.

47.     On September 20, 2017, Alnylam announced positive topline clinical results that patisiran met primary efficacy endpoints and all secondary endpoints.

48.     On November 2, 2017, Alnylam presented the complete dataset at the 1st European ATTR Amyloidosis Meeting for Patients and Doctors showing that patients exhibited improved quality of life, activities of daily living, nutritional status, motor strength, and ambulatory ability, with reduced disease symptoms and disability.

49.     Based on those results, on November 15, 2017, Alnylam initiated the rolling submission of a New Drug Application ("NDA") for patisiran to the FDA and requested priority review.

50.     On November 20, 2017, Alnylam announced that the FDA granted Breakthrough Therapy Designation for patisiran.

51.     On December 11, 2017, patisiran received an expanded Orphan Drug Designation for treatment of transthyretin-mediated amyloidosis.

52.     On December 12, 2017, Alnylam announced the completion of its NDA submission for patisiran; Alnylam is awaiting completion of the FDA's review.

53.     If approved, patisiran will be the first FDA-approved RNAi therapeutic, marking the arrival of a new class of medicines.

54.     On February 1, 2018, Alnylam announced that the FDA accepted the patisiran NDA and granted priority review. The FDA has set an action date for August 11, 2018 under the Prescription Drug User Fee Act ("PDUFA").

55.     Throughout the NDA review process, the FDA has given Alnylam every indication that approval will be forthcoming pursuant to the PDUFA date of August 11, 2018, if not sooner.

56.     The FDA has told Alnylam that it does not expect to hold an advisory committee meeting for the patisiran NDA. Exh. 11, Feb. 1, 2018 Business Wire Article.

57.     Alnylam is actively preparing for the U.S. launch of patisiran. Exh. 12, Alnylam's May 3, 2018 Press Release.

58.     Alnylam believes it is "launch ready" and is "prepared to get patisiran to patients as soon as it is approved." *Id.*

59.     Defendants are aware that patisiran is successfully working its way through the FDA.

60.     Alnylam's launch of patisiran is "imminent." Exh. 13, May 8, 2018 FierceBiotech Article.

61.     Alnylam has spent hundreds of millions of dollars developing patisiran with the goal that it will help hATTR amyloidosis patients who have no current FDA-approved treatment option, other than liver transplantation for early stage disease.

62.     Alnylam has expended substantial resources in researching, developing, and preparing to launch and commercialize patisiran. Alnylam brings this action to lift the cloud created by the imminent threat of a lawsuit by one or both of the Defendants against Alnylam for alleged infringement of the Silence Patents.

63.     Without declaratory relief, the threat of suit poses a substantial risk of injury to Alnylam as well as the patients, physicians, nurses, and other healthcare professionals planning to use patisiran upon FDA approval. The continued existence of a threat of suit based on the Silence Patents harms Alnylam's manufacture, marketing, and expected future sale and use of patisiran.

## THE SILENCE PATENTS

64.     Upon information and belief, Silence plc is a company based in the United Kingdom that has intellectual property world-wide including patents focused on RNAi technology.

65.     Upon information and belief, as of June 22, 2018, Silence plc has no products of its own on the market or in advanced clinical trials.

66.     Upon information and belief, Silence plc is the exclusive licensee of the Silence Patents from Silence GmbH, the assignee of record of the Silence Patents.

67.     The '245 patent is titled "Interfering RNA Molecules" and issued on February 22, 2011.

68.     The '370 patent is titled "Interfering RNA Molecules" and issued on December 4, 2012.

69.     The '215 patent is titled "Interfering RNA Molecules" and issued on January 13, 2015.

70.     The '092 patent is titled "Interfering RNA Molecules" and issued on December 29, 2015.

71.     The '423 patent is titled "Interfering RNA Molecules" and issued on July 4, 2017.

## ALNYLAM'S DISPUTE REGARDING THE SILENCE PATENTS

72.     Defendants have made statements and engaged in conduct directed to Alnylam that create a real and immediate dispute between the parties regarding the Silence Patents.

73.     On or about March 17, 2016, Silence plc sent a letter to Alnylam at Alnylam's Massachusetts headquarters highlighting certain Alnylam products that were in ongoing clinical trials, and alleging that Silence plc has "several granted patents and patent applications worldwide covering nucleotide sequence modifications for double stranded siRNAs in the field of RNA interference." Exh. 2, Silence plc's March 17, 2016 letter.

74.     Silence plc's March 17, 2016 letter specifically identified the '092 patent and stated that "[t]he siRNA modifications covered by this patent include modifications at the 2' position such as 2'O-methyl and 2'-Fluoro amongst others." *Id.*

75.     Silence plc's March 17, 2016 letter did not mention patisiran.

76.     On or about June 28, 2017, Silence plc sent another letter to Alnylam at Alnylam's Massachusetts headquarters alleging that Alnylam, through patisiran and other Alnylam products, "is infringing and will infringe one or more of" the Silence Patents. Exh. 3, Silence plc's June 28, 2017 letter.

77.     Silence plc alleged that "Silence Therapeutics PLC is the exclusive licensee from its subsidiary Silence Therapeutics GmbH to these patents." *Id.*

78.     In response, Alnylam informed Silence plc that patisiran does not infringe the Silence Patents, but that Alnylam was open to discussions.

79.     Upon information and belief, Silence plc, Silence GmbH, and/or their predecessor companies have engaged in a multi-country litigation strategy to enforce their patents against Alnylam.

80.     On or around July 3, 2017, Silence plc and Silence GmbH issued a claim in the UK High Courts of Justice (Patents Court) naming as defendants Alnylam UK Limited, Alnylam Pharmaceuticals, Inc., and The Medicines Company UK Limited, seeking Supplementary Protection Certificates ("SPCs") relating to Silence GmbH's European patent EP2258847 ("EP '847").

81.     The Silence Patents are part of the same patent family as EP '847.

82.     In their claim, Silence plc and Silence GmbH alleged that EP '847 covers several of Alnylam's late stage products, including patisiran.

83.     On or around October 17, 2017, Silence GmbH served its claim for declaratory relief relating to its alleged entitlement to SPCs on certain Alnylam products in development, including patisiran.

84.     On November 30, 2017, Alnylam's wholly owned subsidiary, Alnylam UK Limited, filed a response to Silence GmbH's claim, alleging that EP '847 is invalid and denying all allegations that Alnylam UK Limited infringes or will infringe EP '847. *Silence Therapeutics GmbH v. Alnylam UK Limited, et al.*, [2017] EWHC (Pat) No. HP-2017-000040 ("Defence" filed by Alnylam UK Limited). This proceeding is still ongoing.

85.     Separately, on October 27, 2017, Alnylam UK Limited initiated a declaratory judgment action in the UK against Defendants for non-infringement and invalidity of EP '847. *Alnylam UK Limited v. Silence Therapeutics GmbH et al.*, [2017] EWHC (Pat) No. HP-2017-000069 ("Particulars of Claim" and "Grounds of Invalidity" filed by Alnylam UK Limited). This proceeding is ongoing.

86.     On December 13, 2017, Alnylam filed an opposition in the European Patent Office ("EPO") against Silence GmbH's EP '847. Alnylam asserts that EP '847 is invalid because it lacks novelty, inventive step, and/or sufficient disclosure. This proceeding is ongoing.

87.     In addition to litigating in the UK, Defendants have also clearly demonstrated their intention to enforce their patents against Alnylam in the United States.

88.     For example, in a press release dated May 30, 2017, following the allowance of the '423 patent, Silence plc's former CEO Ali Mortazavi stated:

> "In allowing this additional patent application for grant, the US patent office has continued to uphold the validity of our expanding US patent estate. We continue to believe that several third party late-stage clinical RNAi candidates, including lipid nanoparticle and GalNAc based products, require licences under our patent portfolio, ***and have therefore written to one company to this effect***. Silence is committed to defending and securing the appropriate value for our IP and is exploring alternative ways to leverage this asset. The first launch for these medicines is anticipated in 2018. We consider that potential licences under our patent estate could have a significant financial effect relative to the current market capitalisation of Silence."

Exh. 4, Silence plc's May 30, 2017 Press Release (emphasis added).

89.     In a press release dated November 20, 2017, in response to the ongoing litigation in UK between the parties, Silence plc stated:

> "Silence continues to regard these actions from all parties as simply 'normal course of business' at the commencement of litigation, and continues to believe that certain Alnylam products require a licence under the Silence patent estate."

Exh. 5, Silence plc's November 20, 2017 Press Release.

90.     Additionally, according to public records of the EPO, Silence plc, Silence GmbH, and/or their predecessor companies have filed at least 15 European patent oppositions against third-party patents on RNAi technology since as early as around May 28, 2003 through present day. Six of the 15 oppositions are filed against European patents assigned to Alnylam's wholly owned subsidiary and/or its predecessor companies:

- Atugen AG[1] filed an opposition on May 28, 2003 to Ribopharma AG[2]'s EP1144623, titled "Method and medicament for inhibiting the expression of a defined gene."

- Atugen AG filed an opposition on March 8, 2006 to Alnylam Europe AG's EP1214945, titled "Method and medicament for inhibiting the expression of a defined gene."

- Silence Therapeutics AG filed an opposition on September 24, 2009 to Alnylam Europe AG's EP1550719, titled "Doublestranded RNA (dsRNA) for inhibition the expression of a defined gene."

- Silence Therapeutics AG filed an opposition on December 10, 2010 to Alnylam Europe AG's EP1349927, titled "Method for inhibiting the expression of a target gene and medicament for treating a tumor disease."

- Silence Therapeutics GmbH filed an opposition on April 13, 2017 to Alnylam Europe AG's EP2363479, titled "Oligoribonucucleotide for inhibiting the expression of a predefined gene."

- Silence Therapeutics GmbH filed an opposition on December 15, 2017 to Alnylam Europe AG's EP1798285, titled "Methods and medicament for inhibition the expression of a defined gene."

91.     The strategy of Silence plc, Silence GmbH, and/or their predecessor companies extends beyond European patent oppositions.

---

[1] Upon information and belief, on or before July 10, 2007, Atugen AG was acquired by Silence Therapeutics AG. Upon information and belief, on or before December 22, 2014, Silence Therapeutics AG changed its name to Silence Therapeutics GmbH.

[2] Alnylam Europe AG is the wholly owned subsidiary of Alnylam Pharmaceuticals, Inc. and was incorporated in Germany in June 2000 under the name Ribopharma AG. Alnylam Pharmaceuticals, Inc. acquired Alnylam Europe AG in July 2003.

92.     On April 2, 2018, Defendants brought patent infringement proceedings in Portugal against Alnylam's patisiran product.   Exh. 14, Silence plc's April 3, 2018 Press Release.

93.     Defendants stated, "[w]e reiterate that we will defend the Silence patent estate where we consider third parties to be infringing the company's patent rights." *Id.*

94.     In sum, through their statements and actions, including in the EPO to narrow or cancel patent claims granted by the EPO to others in the field of RNAi, including Alnylam, Defendants have made it clear to the biopharmaceutical industry generally, and to Alnylam in particular, that they believe the claims of Defendants' patents, whether in the United States or Europe, preclude others, including Alnylam, from commercially manufacturing, selling, using, offering for sale, or importing chemically modified siRNA molecules without Defendants' permission.

95.     Based on Defendants' statements and actions targeting Alnylam and its related and/or predecessor companies with respect to Alnylam's patisiran and other investigational pipeline products, there is a real and immediate dispute that exists between parties with adverse legal interests concerning the Silence Patents and Alnylam's expected future sale of patisiran.

96.     Until and unless Alnylam obtains a court decision of non-infringement, it faces potential infringement liability, as Alnylam has expended and continues to expend immense resources researching, developing, and preparing to launch and commercialize patisiran. With Defendants' continued threats of litigation, Alnylam can only alleviate this harm and obtain certainty through a declaratory judgment from this Court on the Silence Patents.

## COUNT 1 – NON-INFRINGEMENT OF THE '245 PATENT

97.     Alnylam re-alleges and incorporates by reference each of the allegations in the preceding paragraphs of this complaint.

98.     Silence plc has alleged and continues to allege that Alnylam's patisiran product is infringing one or more claims of the '245 patent.

99.     An actual and substantial controversy has arisen and now exists between the parties concerning whether Alnylam's manufacture, use, sale, offer for sale, or importation of patisiran infringes or will infringe any claim of the '245 patent, directly, indirectly, literally, or under the doctrine of equivalents.

100.    The '245 patent includes 11 claims. Claim 1 of the '245 patent is the only independent claim and the rest of the claims depend directly or indirectly from claim 1.

101.    Claim 1 of the '245 patent requires, among other things, "[a] nucleic acid molecule comprising a first strand and a second strand, wherein said first strand comprises a first stretch . . .  wherein said second strand comprises a second stretch . . . wherein said first strand and said second strand form a double-stranded structure comprising said first stretch and said second stretch, wherein said first stretch and said second stretch each comprises contiguous alternating single 2'-O-methyl modified ribonucleotides, said single 2'-O-methyl modified ribonucleotides alternate with unmodified or modified ribonucleotides."

102.    Alnylam's patisiran product does not have "contiguous alternating single 2'-O-methyl modified ribonucleotides" that "alternate with unmodified or modified ribonucleotides" on both strands. Exh. 6, Schematic of patisiran in an excerpt of WHO Drug Information Vol. 27, No. 2, 2013, List 109.

103.     Therefore, for at least that reason, Alnylam's patisiran product does not meet the claim limitations of claim 1 of the '245 patent and does not and will not infringe claim 1 of the '245 patent, directly, indirectly, literally, or under the doctrine of equivalents.

104.     Because the other claims in the '245 patent depend from claim 1, Alnylam's patisiran product also does not and will not infringe those claims, directly, indirectly, literally, or under the doctrine of equivalents.

105.     Alnylam expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and after the Court has construed the claims.

106.     Alnylam seeks a declaration that making, using, offering to sell, selling, and importing patisiran does not and will not infringe any claim of the '245 patent.

## COUNT 2 – NON-INFRINGEMENT OF THE '370 PATENT

107.     Alnylam re-alleges and incorporates by reference each of the allegations in the preceding paragraphs of this complaint.

108.     Silence plc has alleged and continues to allege that Alnylam's patisiran product is infringing one or more claims of the '370 patent.

109.     An actual and substantial controversy has arisen and now exists between the parties concerning whether Alnylam's manufacture, use, sale, offer for sale, or importation of patisiran infringes or will infringe any claim of the '370 patent, directly, indirectly, literally, or under the doctrine of equivalents.

110.     The '370 patent includes 23 claims. Claim 1 of the '370 patent is the only independent claim and the rest of the claims depend directly or indirectly from claim 1.

111.   Claim 1 of the '370 patent requires, among other things, "[a] nucleic acid molecule comprising a first strand and a second strand, . . . wherein said first strand comprises a first stretch . . . wherein said second strand comprises said second stretch . . . wherein said first strand and said second strand form a double-stranded structure comprising said first stretch and said second stretch, wherein said first stretch and said second stretch each comprises contiguous alternating ribonucleotides modified with an O-alkyl group, said alternating ribonucleotides modified with an O-alkyl group alternating with unmodified or modified ribonucleotides."

112.   Alnylam's patisiran product does not have "contiguous alternating ribonucleotides modified with an O-alkyl group" that are "alternating ribonucleotides modified with an O-alkyl group alternating with unmodified or modified ribonucleotides" on both strands. Exh. 6.

113.   Therefore, for at least that reason, Alnylam's patisiran product does not meet the claim limitations of claim 1 of the '370 patent and does not and will not infringe claim 1 of the '370 patent, directly, indirectly, literally, or under the doctrine of equivalents.

114.   Because the other claims in the '370 patent depend from claim 1, Alnylam's patisiran product also does not and will not infringe those claims, directly, indirectly, literally, or under the doctrine of equivalents.

115.   Alnylam expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and after the Court has construed the claims.

116.   Alnylam seeks a declaration that making, using, offering to sell, selling, and importing patisiran does not and will not infringe any claim of the '370 patent.

## COUNT 3 – NON-INFRINGEMENT OF THE '215 PATENT

117.    Alnylam re-alleges and incorporates by reference each of the allegations in the preceding paragraphs of this complaint.

118.    Silence plc has alleged and continues to allege that Alnylam's patisiran product is infringing one or more claims of the '215 patent.

119.    An actual and substantial controversy has arisen and now exists between the parties concerning whether Alnylam's manufacture, use, sale, offer for sale, or importation of patisiran infringes or will infringe any claim of the '215 patent, directly, indirectly, literally, or under the doctrine of equivalents.

120.    The '215 patent includes 19 claims. Claim 1 of the '215 patent is the only independent claim and the rest of the claims depend directly or indirectly from claim 1.

121.    Claim 1 of the '215 patent requires, among other things, "[a] nucleic acid molecule comprising a first strand and a second strand, . . . wherein said nucleic acid molecule is blunt ended on at least one end."

122.    Alnylam's patisiran product is not "blunt ended on at least one end." Exh. 6.

123.    Therefore, for at least that reason, Alnylam's patisiran product does not meet the claim limitations of claim 1 of the '215 patent and does not and will not infringe claim 1 of the '215 patent, directly, indirectly, literally, or under the doctrine of equivalents.

124.    Because the other claims in the '215 patent depend from claim 1, Alnylam's patisiran product also does not and will not infringe those claims, directly, indirectly, literally, or under the doctrine of equivalents.

125.    Alnylam expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and after the Court has construed the claims.

126.    Alnylam seeks a declaration that making, using, offering to sell, selling, and importing patisiran does not and will not infringe any claim of the '215 patent.

## COUNT 4 – NON-INFRINGEMENT OF THE '092 PATENT

127.    Alnylam re-alleges and incorporates by reference each of the allegations in the preceding paragraphs of this complaint.

128.    Silence plc has alleged and continues to allege that Alnylam's patisiran product is infringing one or more claims of the '092 patent.

129.    An actual and substantial controversy has arisen and now exists between the parties concerning whether Alnylam's manufacture, use, sale, offer for sale, or importation of patisiran infringes or will infringe any claim of the '092 patent, directly, indirectly, literally, or under the doctrine of equivalents.

130.    The '092 patent includes 10 claims. Claim 1 of the '092 patent is the only independent claim and the rest of the claims depend from claim 1.

131.    Claim 1 of the '092 patent requires, among other things, "[a] ribonucleic acid comprising a double stranded structure . . .  whereby the double stranded structure is blunt ended or has an overhang and contains a group of ribonucleic acids on the first or second stretch/strand that has a modification at the 2'-position selected from an amino, fluoro, methoxy, alkoxy or alkyl modification and said group of modified ribonucleic acids on the first or second stretch/strand is flanked on one or both sides by a group of flanking ribonucleic acids having a modification at the 2'-position selected from an amino, fluoro, methoxy, alkoxy or alkyl

modification that is different from the modification on said group of ribonucleic acids modified at the 2'-position."

132.    Alnylam's patisiran product does not "contain[] a group of ribonucleic acids on the first or second stretch/strand that has a modification at the 2'-position selected from an amino, fluoro, methoxy, alkoxy or alkyl modification and said group of modified ribonucleic acids on the first or second stretch/strand is flanked on one or both sides by a group of flanking ribonucleic acids having a modification at the 2'-position selected from an amino, fluoro, methoxy, alkoxy or alkyl modification that is different from the modification on said group of ribonucleic acids modified at the 2'-position." Exh. 6.

133.    Therefore, for at least that reason, Alnylam's patisiran product does not meet the claim limitations of claim 1 of the '092 patent and does not and will not infringe claim 1 of the '092 patent, directly, indirectly, literally, or under the doctrine of equivalents.

134.    Because the other claims in the '092 patent depend from claim 1, Alnylam's patisiran product also does not and will not infringe those claims, directly, indirectly, literally, or under the doctrine of equivalents.

135.    Alnylam expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and after the Court has construed the claims.

136.    Alnylam seeks a declaration that making, using, offering to sell, selling, and importing patisiran does not and will not infringe any claim of the '092 patent.

## COUNT 5 – NON-INFRINGEMENT OF THE '423 PATENT

137.    Alnylam re-alleges and incorporates by reference each of the allegations in the preceding paragraphs of this complaint.

138.     Silence plc has alleged and continues to allege that Alnylam's patisiran product is infringing one or more claims of the '423 patent.

139.     An actual and substantial controversy has arisen and now exists between the parties concerning whether Alnylam's manufacture, use, sale, offer for sale, or importation of patisiran infringes or will infringe any claim of the '423 patent, directly, indirectly, literally, or under the doctrine of equivalents.

140.     The '423 patent includes 25 claims.  Claim 1 and claim 12 of the '423 patent are the only independent claims and the rest of the claims depend directly or indirectly from either claim 1 or claim 12.

141.     Claim 1 and claim 12 require, among other things, that "at least one strand" (claim 1) or "each strand" (claim 12) "of the double-stranded siRNA molecule comprises one or more groups of modified nucleotides and one or more groups of flanking nucleotides, the flanking nucleotides being on one or both sides of the modified nucleotides, wherein: the one or more groups of modified nucleotides have an amino, fluoro, alkoxy, or alkyl modification at the 2'-position; and the one or more groups of flanking nucleotides have an amino, fluoro, alkoxy, or alkyl modification at the 2'-position, the modification at the 2'-position of the flanking nucleotide being different from the modification at the 2'-position of the modified nucleotide."

142.     Alnylam's patisiran product does not "comprise[] one or more groups of modified nucleotides and one or more groups of flanking nucleotides, the flanking nucleotides being on one or both sides of the modified nucleotides, wherein: the one or more groups of modified nucleotides have an amino, fluoro, alkoxy, or alkyl modification at the 2'-position; and the one or more groups of flanking nucleotides have an amino, fluoro, alkoxy, or alkyl modification at the 2'-position, the modification at the 2'-position of the flanking nucleotide being different from

21

the modification at the 2'-position of the modified nucleotide" on either the first or the second strand. Exh. 6.

143.    Therefore, for at least that reason, Alnylam's patisiran product does not meet the claim limitations of claim 1 and claim 12 of the '423 patent and does not and will not infringe claim 1 or claim 12 of the '423 patent, directly, indirectly, literally, or under the doctrine of equivalents.

144.    Because the other claims in the '423 patent depend from claim 1 or claim 12, Alnylam's patisiran product also does not and will not infringe those claims, directly, indirectly, literally, or under the doctrine of equivalents.

145.    Alnylam expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and after the Court has construed the claims.

146.    Alnylam seeks a declaration that making, using, offering to sell, selling, and importing patisiran does not and will not infringe any claim of the '423 patent.

## PRAYER FOR RELIEF

WHEREFORE, Alnylam requests from this Court the following relief:

a.      Judgment in Alnylam's favor and against Defendants on all counts asserted in this complaint;

b.      A declaration that the manufacture, use, sale, offer of sale, or importation of Alnylam's patisiran product does not and will not infringe, directly, indirectly, literally or under the doctrine of equivalents, any properly construed claim of the '245 patent and/or that Alnylam is not liable to Defendants for any damages for the alleged infringement of the '245 patent;

c.      A declaration that the manufacture, use, sale, offer of sale, or importation of Alnylam's patisiran product does not and will not infringe, directly, indirectly, literally or under the doctrine of equivalents, any properly construed claim of the '370 patent and/or that Alnylam is not liable to Defendants for any damages for the alleged infringement of the '370 patent;

d.      A declaration that the manufacture, use, sale, offer of sale, or importation of Alnylam's patisiran product does not and will not infringe, directly, indirectly, literally or under the doctrine of equivalents, any properly construed claim of the '215 patent and/or that Alnylam is not liable to Defendants for any damages for the alleged infringement of the '215 patent;

e.      A declaration that the manufacture, use, sale, offer of sale, or importation of Alnylam's patisiran product does not and will not infringe, directly, indirectly, literally or under the doctrine of equivalents, any properly construed claim of the '092 patent and/or that Alnylam is not liable to Defendants for any damages for the alleged infringement of the '092 patent;

f.      A declaration that the manufacture, use, sale, offer of sale, or importation of Alnylam's patisiran product does not and will not infringe, directly, indirectly, literally or under the doctrine of equivalents, any properly construed claim of the '423 patent and/or that Alnylam is not liable to Defendants for any damages for the alleged infringement of the '423 patent;

g.      An order permanently enjoining Defendants, their officers, directors, servants, managers, employees, agents, successors and assignees, and all persons in active concert or participation with them, from alleging that Alnylam's patisiran product infringes or will infringe the '245 patent;

h.      An order permanently enjoining Defendants, their officers, directors, servants, managers, employees, agents, successors and assignees, and all persons in active concert or

participation with them, from alleging that Alnylam's patisiran product infringes or will infringe the '370 patent;

i.      An order permanently enjoining Defendants, their officers, directors, servants, managers, employees, agents, successors and assignees, and all persons in active concert or participation with them, from alleging that Alnylam's patisiran product infringes or will infringe the '215 patent;

j.      An order permanently enjoining Defendants, their officers, directors, servants, managers, employees, agents, successors and assignees, and all persons in active concert or participation with them, from alleging that Alnylam's patisiran product infringes or will infringe the '092 patent;

k.      An order permanently enjoining Defendants, their officers, directors, servants, managers, employees, agents, successors and assignees, and all persons in active concert or participation with them, from alleging that Alnylam's patisiran product infringes or will infringe the '423 patent;

l.      A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and an award to Alnylam of its attorneys' fees and costs;

m.      Such other and further relief as this Court may deem just and proper.

Dated: June 22, 2018                          Respectfully submitted,

                                              Alnylam Pharmaceuticals, Inc.


*OF COUNSEL:*                                 /s/ John J. Cotter
Scott K. Reed (*pro hac vice*)                John J. Cotter (BBO# 554524)
Ha Kung Wong (*pro hac vice*)                 K&L GATES LLP
Robert S. Schwartz (*pro hac vice*)           One Lincoln Street
Melinda R. Roberts (*pro hac vice*)           Boston, MA 02111-2950
Prajakta A. Sonalker (*pro hac vice*)         Phone: (617) 261-3178
Una Fan (*pro hac vice*)                      Fax: (617) 261-3175
Gregory J. Manas (*pro hac vice*)             john.cotter@klgates.com
Omobolaji A. Bedu (*pro hac vice*)
FITZPATRICK, CELLA, HARPER & SCINTO           *Attorneys for Plaintiff Alnylam*
1290 Avenue of the Americas                   *Pharmaceuticals, Inc.*
New York, NY 10104
Phone: (212) 218-2100
Fax: (212) 218-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document file through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (if any) on June 22, 2018.

/s/ *John J. Cotter*
John J. Cotter (BBO# 554524)
